UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHERRY ADKINS, on behalf of plaintiff and a class, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 15-cv-887 ) |
| | ) Judge Joan B. Gottschall |
| FINANCIAL RECOVERY SERVICES, INC., CAVALRY PORTFOLIO SERVICES, LLC, and CAVALRY SPV I, LLC, | ) ) ) ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION & ORDER

Defendants Cavalry Portfolio Services, LLC ("CPS") and Cavalry SPV 1, LLC ("SPV") (collectively, "the Cavalry entities") have moved to dismiss plaintiff's First Amended Complaint arguing that plaintiff's allegation that defendant Financial Recovery Systems ("FRS") took its alleged illegal action in this case as an agent of CPS and SPV is inadequately pleaded. Although plaintiff pleads in some detail a contractual relationship between FRS and CPS covering accounts owned by SPV, the only allegations that FRS committed illegal conduct *in this case* as the agent of the Cavalry entities are set forth in paragraphs 21 and 26: "FRS acted as an agent for both SPV and CPS with respect to all matters at issue" and "In April, 2014, FRS sent plaintiff the letter attached as Exhibit B, on behalf of SPV and CPS."

The court agrees with the Cavalry entities that these conclusory allegations are insufficient to allege that the Cavalry entities are responsible for any harm to plaintiff or the class. The detailed allegations concerning the relationship of FRS and CPS with respect to debts owned by SPV are nowhere connected to plaintiff Adkins' debt.

1

However, while plaintiff has inexplicably failed to point out (or allege) a connection between the Cavalry entities and plaintiff's debt, the letter attached to the Amended Complaint as Exhibit B, which plaintiff alleges she received, states plainly on its face that SPV is the owner of plaintiff's debt. Therefore, since the court is permitted to consider exhibits attached to the complaint in ruling on a motion to dismiss, *see Runnion v. Girl Scouts of Greater Chicago*, 786 F.3d 510, 528 n. 8 (7th Cir. 2015), the First Amended Complaint adequately alleges a connection between plaintiff's debt and the Calvary entities.

The operative question in the court's view is whether the connection is sufficient to charge the Cavalry entities with a violation of the FDCPA. The complaint sets out a complex relationship between FRS and the Cavalry entities which the court finds sufficient, at the motion to dismiss stage, to permit the claim to go forward. The First Amended Complaint alleges that CPS acted as the agent for SPV pursuant to a "Servicing and Management Agreement" attached to the First Amended Complaint as Exhibit A. That agreement provides that CPS will act as a debt collector with respect to accounts owned by SPV. The First Amended Complaint further alleges, on information and belief, that CPS and FRS have a contract covering accounts owned by SPV, whereby FRS agreed to act as a collection agent for CPS in the case of SPV accounts. This agreement, according to the First Amended Complaint, give CPS the right to exercise considerable supervision over FRS' collection activities: to be kept informed, to recall accounts, to terminate FRS' services, to audit its accounts at FRS, to access FRS' computer systems remotely, to instruct FRS regarding the handling of its accounts, to inform FRS of its compliance with performance standards, and to be entitled to accountings and indemnification. Plaintiff has also adequately alleged, for motion to dismiss purposes, that both SPV and CPS are debt

collectors, licensed as debt collectors under the Illinois Collection Agency Act. (Am. Compl. ¶¶ 9-14, 16-18).

While plaintiff has alleged that SPV owns plaintiff's debt, she also alleges that SPV is a debt collector, in the business of collecting debts. Although the FDCPA does not generally reach the activities of creditors or owners of debts, when the creditor also acts as a debt collector, the creditor is covered by the FDCPA. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 403-04 (3d Cir. 2000). The inquiry as to whether an entity is a debt collector is not case specific. It depends not on what the entity did in this case, but on whether the entity regularly collects debts. *See, e.g., Schultz v. Arrow Financial Services, LLC*, 465 F.Supp.2d 872, 875 (N.D. Ill. 2006).

Another issue raised by the First Amended Complaint is whether the allegation that CPS acted as SPV's agent, and the allegation that FRS acted as CPS' agent, are viable FDCPA theories against the Cavalry entities. The Seventh Circuit has not spoken to this issue, but the Third Circuit has, and this court finds its reasoning persuasive. In *Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-05 (3d Cir. 2000), the Third Circuit held "that an entity which itself meets the definition of 'debt collector' may be held vicariously liable for unlawful collection activities carried out by another on its behalf." *Accord Deutsche Bank Trust Co. v. Garst*, 989 F.Supp.2d 1194, 1202 (N.D. Ala. 2013); *Okyere v. Palisades Collection, LLC,* 961 F.Supp. 2d 508, 515-16 (S.D.N.Y. 2013); *Suqilanda v. Cohen & Slamowitz, LLP*, No. 10-cv-5868, 2011 WL 4344044 (S.D.N.Y. Sept. 8, 2011); *Schultz,* 465 F.Supp.2d at 876. This case represents a complex relationship wherein an agent (FRS) works for an agent (CPS) of a principal (SPV). As long as the agency relationship is adequately alleged, this court sees no reason why multiple levels of agency responsibility should limit vicarious liability principles.

3

In determining whether agency has been adequately alleged, the court first looks to the Servicing and Management Agreement (Ex. A to the Amended Complaint) between CPS and SPV.[1] SPV is described in the Agreement as the purchaser and hence the owner of consumer accounts in default. CPS is described as SPV's "servicer" and an entity with expertise in collecting portfolio accounts, undertaking to pursue payment for collectibles and to sue where appropriate, as well as to comply with all federal laws, to compromise and settle obligations where appropriate, and to indemnify SPV. (*See* Am. Compl. ¶ 19). CPS and SPV are also alleged to be affiliated companies under common management and control. (*Id.*) The Servicing and Management Agreement is signed by Michael S. Godner, Chief Financial Officer and Treasurer, for both companies. The Cavalry entities' common control, plus the Agreement's provision of termination by either party on thirty days' notice, is a sufficient basis at the pleading stage for plaintiff to attempt to prove that CPS acted as SPV's agent.

The court, however, recognizes a conflict in the cases as to whether, at the proof stage, plaintiff must prove that SPV had control over the actions of CPS or whether it is sufficient that CPS was acting within the scope of its actual or apparent authority under its agreement with SPV. *Compare Scally v. Hilco Receivables, LLC*, 392 F. Supp.2d 1036, 1040 (N.D. Ill. 2005) (in context of motion for summary judgment, refusing to hold one debt collector liable for the collection activities of another where there was no evidence that the alleged principal controlled or had the right to control the alleged agent's contact with debtors) *with Okyere v. Palisades Collection, LLC,* 961 F.Supp.2d 508, 517 (S.D.N.Y. 2013) ("We do not agree with a requirement

---

[1]The parties have not indicated whether it is their view that Illinois or federal law governs the formation of an agency relationship in this case, nor have they suggested that the federal and Illinois standards differ. As other courts in this district have held, this court assumes for present purposes that the standards are the same. *See, e.g., Schultz v. Arrow Financial Services, LLC,* 465 F.Supp.2d 872, 877 (N.D. Ill. 2006).

that an FDCPA plaintiff show 'control' because claims that a principal is liable for an agent's actions normally do not require such allegations. Rather, 'traditional vicarious liability rules' ordinarily make principals liable for acts of their agent merely when the agents act 'in the scope of their authority.'") Regardless of the applicable legal test, plaintiff has alleged a close enough connection between the two Cavalry entities to permit her claim that CPS is SPV's agent to go forward.

With respect to the relationship between CPS and FRS, the First Amended Complaint's allegation of a contract which gave CPS the ability to audit the activities of FRS, remotely access FRS' computer system, instruct FRS respecting the handling of its accounts, inform FRS of its compliance with performance standards, and recall its accounts and terminate FRS' services, among other things, is clearly is sufficient to allege CPS' right to control the manner and method of FRS' work. The Amended Complaint thus adequately alleges a principal-agent relationship between CPS and FRS. *See Schultz,* 465 F.Supp.2d at 877; *see also Frazier v. US Bank National Association,* No. 11-cv-8775, 2013 WL 1337263, at *4 (N.D. Ill. March 29, 2013).

The Cavalry entities' Motion to Dismiss is denied; the Cavalry entities' Motion to Stay Discovery is denied as moot.

Date: September 30, 2015                                          /s/
                                                                         Joan B. Gottschall
                                                                         United States District Judge

5